J-S39016-16
J-S39017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.S.M., A MINOR : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| APPEAL OF: J.J.M., FATHER : | |
| : | No. 2227 MDA 2015 |
| : | |

Appeal from the Order Entered November 23, 2015,
in the Court of Common Pleas of York County
Juvenile Division at No.:  CP-67-DP-0000086-2009

| | |
|---|---|
| IN THE INTEREST OF: J.G.K.M., A : | IN THE SUPERIOR COURT OF |
| MINOR : | PENNSYLVANIA |
| : | |
| APPEAL OF: J.J.M., FATHER : | |
| : | No. 2228 MDA 2015 |
| : | |

Appeal from the Order Entered November 23, 2015,
in the Court of Common Pleas of York County
Juvenile Division at No.:  CP-67-DP-0000087-2009

| | |
|---|---|
| IN THE INTEREST OF: S.M.M., A MINOR : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| APPEAL OF: J.J.M., FATHER : | |
| : | No. 2229 MDA 2015 |
| : | |

Appeal from the Order Entered November 23, 2015,
in the Court of Common Pleas of York County
Juvenile Division at No.:  CP-67-DP-0000088-2009

| | |
|---|---|
| IN RE: ADOPTION OF: S.S.M., A MINOR : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| : | |
| APPEAL OF: J.J.M., FATHER : | |
| : | No. 2237 MDA 2015 |
| : | |

Appeal from the Order Entered November 24, 2015,
in the Court of Common Pleas of York County

J-S39016-16
J-S39017-16

Orphans' Court at No.: 2015-0103

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.G.K.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.J.M., FATHER | : | |
| | : | No. 2238 MDA 2015 |
| | : | |

Appeal from the Order Entered November 24, 2015,
in the Court of Common Pleas of York County
Orphans' Court at No.: 2015-0102

| | | |
|---|---|---|
| IN RE: ADOPTION OF: S.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.J.M., FATHER | : | |
| | : | No. 2239 MDA 2015 |
| | : | |

Appeal from the Order Entered November 24, 2015,
in the Court of Common Pleas of York County
Orphans' Court at No.: 2015-0104

BEFORE: STABILE, PLATT\*, AND STRASSBURGER\*, JJ.

MEMORANDUM BY PLATT, J.:                    **FILED JUNE 14, 2016**

In these consolidated and related appeals,[1] J.J.M. (Father) appeals the

orders, entered in the Court of Common Pleas of York County (trial court) on

November 23, 2015, that changed the goals of his children, S.S.M., born

January 2003; J.G.K.M., born February 2005; and S.M.M., born October

---

\* Retired Senior Judge assigned to Superior Court.

[1] On January 12, 2016, this Court consolidated the appeals at 2227, 2228, and 2229 MDA 2015, *sua sponte*, and also consolidated the appeals at 2237, 2238, and 2239 MDA 2015, *sua sponte*. **See** Pa.R.A.P. 513. It directed that these consolidated appeals shall be listed consecutively and stated that the parties may each file a single brief.

- 2 -

2006, (Children), to adoption. Father also appeals the orders of the trial court, entered November 24, 2015, that terminated his parental rights to the Children.[2] We affirm.

The trial court relates the history of this case in its findings of fact in its opinion entered on November 24, 2015. (*See* Trial Court Opinion, 11/24/15, at 2-7). We refer the reader to that opinion for the history of this case.

The trial court held hearings in this matter on October 28 and 29, 2015. Testifying at the hearing on October 28, 2015, were York County Children's Advocacy Center forensic interviewer, Ashley Rehm; Justice Works family resource specialist, Tara Deane; Children's Aid Society art therapist, Yvette Hardy; and York County Children, Youth, and Families caseworker, Kerry Miller. Testifying at the hearing on October 29, 2015, were Father, from prison by telephone, and Ms. Miller.

The trial court entered its orders changing Children's goals to adoption on November 23, 2015, and its orders terminating Father's parental rights, pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b), on November 24, 2015. Father filed his notices of appeal and statements of errors complained of on appeal on December 21, 2015. *See* Pa.R.A.P.

---

[2] The trial court also terminated the parental rights of the Children's mother, C.L.L. (Mother). Mother did not file an appeal.

1925(a)(2)(i). The trial court entered its statement on January 14, 2016, in which it relied on its November 24, 2015 opinion. *See* Pa.R.A.P. 1925(a).

Father raises the following questions on appeal:

1. Whether the trial court erred in changing the goal from reunification with a parent to adoption when Father utilized all available resources to maintain his relationship with his [C]hildren during his incarceration. And his incarceration will conclude in a time frame that would allow him to parent his [C]hildren[?]

2. Whether the trial court erred in deciding to change the goal from reunification with a parent to adoption when Father was utilizing all available resources to comply with the goals set forth for him in the various Family Service Plans[?]

3. Whether the trial court failed to consider the bond between Father and the [C]hildren when deciding to terminate Father's parental rights[?]

(Father's Brief, at 4).

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

- 4 -

> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

The trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re T.F.***, 847 A.2d 738, 742 (Pa. Super. 2004) (citations omitted). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In the Interest of K.Z.S.***, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and

welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child, but our case law requires the evaluation of any such bond. **See In re E.M.**, 620 A.2d 481, 484 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. **See In re K.K.R.-S.**, 958 A.2d 529, 533 (Pa. Super. 2008).

In regard to incarcerated persons in a termination case, our Supreme Court has stated:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

**In re Adoption of S.P.**, 47 A.3d 817, 828 (Pa. 2012). The Supreme Court explained:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control or subsistence and the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S.[A.] § 2511(a)(2). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to

determine, *inter alia*, how a parent's incarceration will factor into
an assessment of the child's best interest.

***Id.*** at 830-31 (citations and quotation marks omitted).[3]

We have thoroughly reviewed the record, briefs, and the applicable law, and determined that the evidence presented is sufficient to support the trial court's orders changing the Children's goals to adoption, and the orders terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511.

Our reading of the trial court's opinion reveals that it carefully and methodically reviewed the evidence and ably addressed Father's issues presented on appeal. (***See*** Trial Ct. Op., at 7-17 (concluding that (1) change of goal to adoption would be in Children's best interest; (2) Father has failed to perform any significant parental duties and termination of his parental rights will provide Children with stability and permanency; (3) Children have been in placement for one year and one month, and are happy and well-bonded to foster family; and (4) although Father has some diminishing bond with Children, termination of his parental rights will best serve developmental, physical, and emotional needs and welfare of Children, especially considering Children's belief as to Father's sexual conduct with S.S.M.)). Accordingly, we will affirm based on the concise, thoughtful, and

---

[3] Our review of the record reveals that Father's actions and failures to act in relation to the Children, as detailed by the trial court in its opinion entered November 24, 2015, and not the fact of his incarceration, establish the bases for the termination of his parental rights.

well-written opinion of the Honorable Todd R. Platts, entered on November 24, 2015.

Therefore, we affirm the trial court's orders, entered November 23, 2015, that changed the Children's goals to adoption, and the trial court's orders, entered November 24, 2015, terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2016

Circulated 06/02/2016 02:58 PM

539016-16
539017-16

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| In the Interest of: | : | |
| S.S.M. | : | No. CP-67-DP-86-2009 |
| J.G.K.M. | : | No. CP-67-DP-87-2009 |
| S.M.M. | : | No. CP-67-DP-88-2009 |
| Minor Children | : | Change of Goal |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| In Re: Adoption of | : | |
| S.S.M. | : | No. 2015-0103 |
| J.G.K.M. | : | No. 2015-0102 |
| S.M.M. | : | No. 2015-0104 |
| Minor Children | : | Termination of Parental Rights |

## APPEARANCES:

Martin Miller, Esquire
For York County Children and Youth Services

Sydney C.H. Benson, Esquire
Guardian ad Litem for Minor Children

Lori A. Yost, Esquire
For the Mother

Brooks K. Pomper, Esquire
For the Father

## ADJUDICATION

Before this Court are a Petition for Change of Goal and a Petition for Involuntary Termination of Parental Rights filed by York County Office of Children, Youth and Families (hereinafter, "Agency") on August 18, 2015, regarding S.S.M., J.G.K.M., and S.M.M. (hereinafter, "minor children") whose dates of birth are January ██ 2003, February ██ 2005, and October ██ 2006, respectively.

1

An evidentiary hearing was held on October 28, 2015 and October 29, 2015 addressing testimony and evidence relating to C███ L██ L███ (hereinafter, "Mother") and J███ J██ M███ (hereinafter, "Father"). The entire Dependency Records for minor children, docketed at CP-67-DP-86-2009, CP-67-DP-87-2009, and CP-67-DP-88-2009 were incorporated into the hearing record. Additionally, the Stipulation of Counsel for each child filed October 23, 2015 were also incorporated into the hearing record for the minor children, along with Exhibits 1. 2, 3. 4, 5, 6, 7, 9, 10 and 11 for the Agency. Father's Exhibit 1 was admitted into the hearing record for the minor children. Based upon the testimony and evidence presented at the hearing, as well as the history of this case, the Petition for Change of Goal is GRANTED and the Petition for Involuntary Termination of Parental Rights for Mother and Father is GRANTED as to S.S.M., J.G.K.M, and S.M.M.

## FINDINGS OF FACT

1. S.S.M. was born on January ██ 2003.

2. J.G.K.M. was born on February ██, 2005.

3. S.M.M. was born on October █ 2006.

4. The natural mother of the minor children is C███ L██ L███ whose last known address was ████████████████████████████████████████

5. The Father of the minor children is J███ J██ M███ who is currently incarcerated at ████████ Correctional Facility, ██████ New York 12 East, Cape Vincent New ██████████

2

6. A Petition to Change Court Ordered Goal and Petition for Involuntary Termination of Parental Rights for minor children were filed on August 18, 2015 by the Agency.

7. Certifications of Acknowledgement of Paternity for minor children were filed on August 25, 2015 which indicate that there is not a claim or Acknowledgement of Paternity on file for the minor children.

8. An Application for Emergency Protective Custody was filed by the Agency on June 19, 2014.

9. In an Order for Emergency Protective Custody dated June 19, 2014, sufficient evidence was presented to prove that continuation or return of the minor children to Mother and Father was not in the minor children's best interest. Legal and physical custody was awarded to the Agency. The minor children were placed in foster care.

10. A Dependency Petition was filed by the Agency on June 26, 2014.

11. On September 9, 2014, the minor children were adjudicated dependent. Legal and physical custody was awarded to the Agency for placement in foster care. The goal was initially established as return to a parent or guardian.

12. In an Order dated November 10, 2014, sole medical and educational rights were assigned to the Agency.

13. The minor children have remained dependent since September 9, 2014.

14. The minor children currently reside together.

15. Family Service Plans were prepared and dated as follows:

3

a. Initial Family Service Plan dated February 24, 2014.

b. Revised Family Service Plan dated June 18, 2014.

c. Revised Family Service Plan dated December 18, 2014.

d. Revised Family Service Plan dated May 26, 2015.

16. In a Permanency Review Order dated December 1, 2014, the Court made certain findings and conclusions including, but not limited to:

a. There had been no compliance with the Permanency Plan by the Mother and there had been no compliance with the Permanency Plan by Father.

b. Reasonable efforts had been made by the Agency to finalize the Permanency Plan.

c. Mother had made no progress towards alleviating the circumstances which necessitated the original placement and Father had made no progress toward alleviating the circumstances which necessitated the original placement.

d. Legal and physical custody of the minor children was confirmed with the grandmother.

e. There continued to be a need for placement of the minor children outside the care and custody of Mother and Father.

17. In a Permanency Review Order dated May 26, 2015, the Court made certain findings and conclusions, including, but not limited to:

4

a. There had been no compliance with the Permanency Plan by the Mother and minimal compliance with the Permanency Plan by Father.

b. Reasonable efforts had been made by the Agency to finalize the Permanency Plan.

c. Mother had made no efforts towards alleviating the circumstances which necessitated the original placement and Father had made minimal progress towards alleviating the circumstances which necessitated the original placement.

d. Legal and physical custody of the minor children was confirmed with the Agency.

e. There continued to be a need for placement of the minor children outside the care and custody of the Mother and Father.

18. A Catholic Charities Team opened with Mother on December 3, 2012 and closed unsuccessfully on February 15, 2013.

19. A Justice Works Team opened with Mother on February 6, 2014 and closed unsuccessfully on July 16, 2014.

20. A Pressley Ridge Team opened with Mother on August 5, 2014 and closed unsuccessfully on October 3, 2014.

21. Father has been incarcerated since the adjudication of dependency.

22. Father has not visited with the minor children since the adjudication of dependency.

5

23. A pre-adoptive resource has been identified for the minor children.

24. Minor child, S.S.M., currently operates under an Individualized Education Plan.

25. Minor child, S.S.M., was diagnosed with (AXIS I) attention deficit hyperactivity disorder (ADHD) combined type and (AXIS IV) victim of abuse and neglect in a Discharge Report prepared by Dr. Craig G. Richman dated January 6, 2015.

26. Minor child, S.S.M., was diagnosed with (AXIS I) adjustment disorder with mixed disturbance of emotion and conduct, post-traumatic stress disorder, ICD – not otherwise specified, parent-child relational problems, oppositional defiant disorder, and (AXIS IV) severe psychosocial stressors in a Psychiatric Evaluation prepared by Dr. Anthony Russo dated January 8, 2015.

27. Minor child, J.G.K.M., currently operates under an Individualized Education Plan.

28. Minor child, J.G.K.M., was diagnosed with (AXIS I) adjustment disorder with mixed disturbance of emotion and conduct, attention deficit hyperactivity disorder (ADHD) combined, peer relational problems, and (AXIS IV) conflicts with siblings in a Discharge Report prepared by Dr. J. Phillipp Othmer dated May 29, 2014.

29. Minor child, J.G.K.M., was diagnosed with (AXIS I) attention deficit hyperactivity disorder by history, pervasive developmental disorder – not otherwise specified, intermittent explosive disorder, post-traumatic stress disorder, parent-child relational problems, learning disorder- math, and (AXIS IV) severe psychosocial stressors in a Psychiatric Evaluation prepared by Dr. Anthony Russo dated January 8, 2015.

6

30. Minor child, S.M.M., currently operates under an Individualized Education Plan.

31. Minor child, S.M.M., was diagnosed with (AXIS I) adjustment disorder with mixed disturbance of emotions and conduct, post-traumatic stress disorder, parent-child relational problems, and (AXIS IV) severe psychosocial stressors in a Psychiatric Evaluation prepared by Dr. Anthony Russo dated January 18, 2015.

## DISCUSSION

### I. Petition for Change of Goal

Before the Court can change the goal for a child in a juvenile dependency action, the Agency must prove by clear and convincing evidence that the change of goal would be in the child's best interest. In re Interest of M.B., 674 A.2d 702 (Pa. Super. 1996). In making a disposition, the Court should consider what is best suited to the protection and physical, mental, and moral welfare of the child. 42 Pa.C.S.A §6351; In re Davis, 502 Pa. 110, 121, 465 A.2d 614, 619 (1983). In rendering a disposition "best suited to the protection and physical, mental, and moral welfare of the child," the hearing court must take into account "any and all factors which bear upon the child's welfare and which can aid the court's necessarily imprecise prediction about that child's future well-being." In re Davis, 502 Pa. 110, 122, 465 A.2d 614, 620 (1983).

The purpose of the Juvenile Act is to preserve family unity and to provide for the care, protection, safety and wholesome mental and physical development of the child. 42 Pa.C.S.A. 6301(a)(1)-(1.1). The Juvenile Act was not intended to place children in a more

7

perfect home; instead, the Act gives a court the authority to "intervene to ensure that parents meet certain legislatively determined *irreducible minimum standards* in executing their parental rights." In re J.W., 578 A.2d 952, 958 (Pa. Super. 1990) (emphasis added).

When a child is placed in foster care, the parents have an affirmative duty to make the changes in their lives that would allow them to become appropriate parents. In re Diaz, 669 A.2d 372, 377 (Pa. Super. 1995). A family service plan is created to help give the parents some guidelines as to the various areas that need to be improved. In the Interest of M.B., 565 A.2d 804, 806 (Pa. Super. 1989), app. Denied, 589 A.2d 692 (Pa. 1990). By assessing the parents' compliance and success with this family service plan, the Court can determine if the parents have fulfilled their affirmative duty. In re J.S.W., 651 A.2d 167, 170 (Pa. Super. 1994).

Under Section 6351 of the Adoption Act, the Agency has the burden to show a goal change would serve the child's best interests and the "safety, permanency, and well-being of the child must take precedence over all other considerations." In re D.P., 972 A.2d 1221, 1227 (Pa. Super. 2009), appeal denied, 973 A.2d 1007 (Pa. 2009). Thus, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. 2006).

In the present matter, the Agency has proven by clear and convincing evidence that it is in the minor children's best interest to change the goal to placement for adoption.

8

Throughout the dependency proceedings, Mother's whereabouts were unknown for long periods of time. The Agency was never able to visit Mother's current residence to ascertain whether it was safe and appropriate for minor children. Mother has had no visits with minor children in approximately ten (10) months and her last visit occurred at a court proceeding. Testimony established that minor children are not interested in visiting with Mother and that the minor children's bond with Mother has weakened since the initiation of the dependency proceedings. Mother was uncooperative with her assigned in-home teams and counselor at Pennsylvania Counseling Services. Due to frequent missed appointments, Mother's in-home teams were closed unsuccessfully and Mother was discharged by her counselor. Mother was present for the termination of parental rights hearing held on October 28, 2015 but she left during the lunchtime recess and failed to return for the remainder of the hearing.

Father has been incarcerated for rape of a minor since the initiation of the dependency proceedings. Testimony established that Father's anticipated release date is in July 2016 and that he will be a registered sex offender upon his release. Father last resided with minor children approximately seven (7) to eight (8) years ago. Father testified that when he and Mother separated he rarely saw the minor children and only obtained supervised visits with the children through the New York Administration for Children's Services. Testimony further established that the minor children believe that Father had sexual relations with minor child, S.S.M., when she was approximately seven (7) years old. Agency's Exhibit 11, a York County Children's Advocacy Center Interview Summary for

9

S.S.M. dated March 24, 2015, reports that the minor child stated that she and Father "usually do have sex." Agency's Exhibit 10, a York County Children's Advocacy Center Interview Summary for S.S.M. dated July 9, 2014, reports that S.S.M. stated that Mother and Father starved minor children for ten (10) days and locked them in their bedrooms.

Overall, Mother and Father have made no progress towards alleviating the circumstances which caused the minor children to be placed and have not assumed any major parental duties for minor children. Therefore, the Court finds that the minor children's best interest demands that the goal be changed from reunification with a parent to placement for adoption.

## II.    Petition for Involuntary Termination of Parental Rights

The Agency argues that Mother's and Father's parental rights to the minor children should be terminated pursuant to 23 Pa.C.S. §2511(a)(1), (2), (5), and (8) of the Adoption Act. The Agency has the burden of establishing by clear and convincing evidence that statutory grounds exist to justify the involuntary termination of parental rights. In re Child M., 681 A.2d 793, 797 (Pa. Super. 1996). The clear and convincing standard means that the evidence presented by the Agency is so "clear, direct, weighty, and convincing" that one can "come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Matter of Sylvester, 555 A.2d 1202, 1202-1204 (Pa. 1989). The Agency must also present evidence proving that the termination of parental rights will serve the child's best interests. In the Matter of Adoption of Charles E.D.M. II, 708 A.2d 88, 92-93 (Pa. 1998). To

10

determine whether termination is within the best interest of the child, the court must examine the possible effect the termination would have on the child's needs and general welfare. In re Adoption of Godzak, 719 A.2d 365, 368 (1998).

**THE AGENCY HAS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT PARENTAL RIGHTS TO THE MINOR CHILDREN MUST BE TERMINATED PURSUANT TO 23 Pa.C.S. §2511(a)(1)**

To terminate parental rights under 23 Pa.C.S. §2511(a)(1) of the Adoption Act, the Agency must establish, by clear and convincing evidence, that the parent has either demonstrated a settled purpose of relinquishing parental claim to a child or has failed to perform parental duties. In the Matter of Adoption of Charles E.D.M. III, 708 A.2d 88 (Pa. 1998). Once one of the two factors has been proven, the Court must examine the following three factors:

1. Parent's explanation for the conduct;

2. Post-abandonment contact between parent and child; and

3. Effect of termination on child. *Id.*

The Agency has proven by clear and convincing evidence that Mother and Father have failed to perform parental duties for the minor children. Since the adjudication of dependency, Father has been incarcerated and has not performed any significant parental duties for the minor children. Father has written letters to the minor children and sent minor child, S.S.M., a gift. In light of the testimony regarding Father's sexual interactions with minors, the Court has grave concerns over Father parenting minor children. Mother has not

11

performed any parental duties for minor children during the dependency proceeding. Mother has not visited minor children in approximately ten (10) months and her last two (2) visits with minor children occurred at court proceedings. Overall, the Court finds that the termination of Mother's and Father's parental rights will provide a benefit to the minor children in that the children will achieve stability and permanency in a loving and safe home.

Therefore, for all the reasons stated above, the Agency has proven by clear and convincing evidence that termination of parental rights to the minor children is justified pursuant to Section 2511(a)(1) of the Adoption Act.

## THE AGENCY HAS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT PARENTAL RIGHTS TO THE MINOR CHILDREN MUST BE TERMINATED PURSUANT TO 23 Pa.C.S. §2511(a)(2), (5), and (8)

The Agency has also proven by clear and convincing evidence that the parental rights to minor children should be terminated pursuant to 23 Pa.C.S. §2511(a)(2), (5), and (8) of the Adoption Act. The mandates of these sections are as follows:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental wellbeing and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to removal or placement of the child within a reasonable

12

period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of a parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

The Court finds that the conditions which led the minor children to placement outside the care and custody of Mother and Father continue to exist. The minor children have been in placement for approximately one (1) year and one (1) month. Minor children are happy and well-bonded to the foster family. Father has been incarcerated for the entirety of the dependency proceedings and the Court is concerned with his ability to appropriately parent minor children in light of his sexual conduct with minors. Upon his release, Father would need to obtain a job and an appropriate residence. Father testified that he last lived with minor children in 2007/2008 at which time he moved out of the home and rarely saw minor children. Father further testified that Mother then moved with the minor children to Pennsylvania and that he did not visit the minor children while they were residing in Pennsylvania. It was only when the minor children were brought back to New York by the Administration for Children's Services to be placed in foster care that Father testified he had limited supervised visits with minor children in 2009/2010. Father's supervised visits ended when he was arrested in 2010.

Mother has not visited with minor children in approximately ten (10) months and testimony established that minor children do not wish to see Mother. Throughout the

13

duration of the dependency proceedings, Mother did not inquire as to the well-being of minor children. Mother did not keep the Agency informed as to her whereabouts and the Agency was not able to visit Mother's current residence to determine whether it was safe and appropriate for minor children. Mother is currently unemployed and on probation for food stamp fraud.

Overall, Mother and Father are unable to obtain custody of the minor children at this time and have made no progress in alleviating the circumstances which necessitated the minor children's placement. In consideration of this this testimony, the Court finds that the Agency clearly and convincingly established that termination of parental rights is justified pursuant to Sections 2511(a)(2), (5), and (8) of the Adoption Act.

### IN CONSIDERATION OF §2511(b), TERMINATION OF PARENTAL RIGHTS WOULD BEST SERVE THE NEEDS AND WELFARE OF THE MINOR CHILDREN

Having established the statutory grounds for the involuntary termination of the parental rights of Father, the Court's final consideration is whether termination of parental rights will best serve the developmental, physical and emotional needs and welfare of the child. 23 Pa.C.S. §2511(b).

> [T]he Court must carefully consider the tangible dimension, as well as the intangible dimension – the love, comfort, security, and closeness – entailed in a parent-child relationship. (citations omitted). The court must consider whether a bond exists between the child and [parent], and whether termination would destroy an existing beneficial relationship. In re: B.N.M., 856 A.2d 847 (Pa. Super. 2004).

14

The Court has thoroughly evaluated the minor children's relationships in this matter. The Court finds that Father has a diminishing bond with minor children. However, the Court has grave concerns as to whether this bond is a healthy one, especially considering the minor children's belief as to Father's sexual conduct with minor child, S.S.M. At this point, the Court believes that, although some level of bond remains between Father and minor children, the children will not be negatively impacted by the termination of Father's parental rights. The Court finds that Mother's bond with minor children has weakened dramatically since the adjudication of dependency. Testimony established that Mother has not exercised her visits with minor children and has not seen them in approximately ten (10) months. Mother has only seen minor children at court proceedings when she had the ability to visit them every other week. Testimony further established that minor children have no interest in continuing their relationship with Mother. At this point, the Court believes that the children will not be negatively impacted by the termination of Mother's parental rights. The Court also finds that the bond between the minor children and their foster family is healthy and growing stronger daily. Testimony established that the children are happy and feel comfortable in their care. Minor children know who their Mother and Father are but it is the foster parents who take care of their daily needs and act as the children's parental figures. The bond that the minor children have with the foster family can provide safety, security and permanency for the children. Therefore, termination of parental rights will best meet the needs of the children and permit the children to achieve the stability that they deserve.

15

## CONCLUSIONS OF LAW

1. The current placement of S.S.M., J.G.K.M., and S.M.M. continues to be necessary and appropriate. 42 Pa.C.S. §6351(f)(1).

2. Mother and Father have not been able to meet the goals set forth in the family service plans. 42 Pa.C.S. §6351(f)(2).

3. The circumstances which necessitated the children's original placement have not been alleviated. 42 Pa.C.S. §6351(f)(3).

4. The current goal for the children of reunification with a parent is no longer feasible and appropriate because Mother and Father have failed to meet the irreducible minimum requirements necessary to parent the children. 42 Pa.C.S. §6351(f)(4).

5. The minor children's best interests demand that the current goal of reunification with a parent be changed to placement for adoption.

6. Mother and Father have failed to perform parental duties for a period well in excess of six (6) months. 23 Pa.C.S. §2511(a)(1).

7. The Agency has established by clear and convincing evidence that the inability and refusal of Mother and Father has caused the children to be without parental care, control or subsistence necessary for their physical or mental well-being and the conditions cannot be remedied by Mother and Father. 23 Pa.C.S. §2511(a)(2).

8. The Agency has established by clear and convincing evidence that the children were removed from the care of the parents for a period in excess of twelve (12) months

16

and have never been returned to the parents' care. The conditions which led to the children's removal from the parents care continue to exist and Mother and Father cannot remedy these conditions within a reasonable time. 23 Pa.C.S. §2511(a)(5) and (8).

## SUMMARY

In conclusion, the Court believes that the termination of Mother's and Father's parental rights is clearly in the best interests of the minor children to promote their welfare and allow them to achieve permanency. The Court is therefore executing a Decree terminating Father's parental rights with respect to S.S.M., J.G.K.M., and S.M.M. and an Order directing that the current goal of reunification with parent or guardian for S.S.M., J.G.K.M., and S.M.M. is changed to placement for adoption. Said Order also establishes the concurrent goal for S.S.M., J.G.K.M., and S.M.M. to be placement with a subsidized permanent legal custodian.

Dated: November 23, 2015

BY THE COURT,

TODD R. PLATTS, JUDGE

17